UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRYAN BRASWELL, a married person but filing in his individual capacity,<br><br>        Plaintiff,<br><br>   v.<br><br>SHORELINE FIRE DEPARTMENT, formerly known as King county Fire District No. 4; and GARY SOMERS,<br><br>        Defendants. | CASE NO. C08-0924 RSM<br><br>ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND STRIKING PENDING MOTIONS |

## **I. INTRODUCTION**

In this matter, Plaintiff Bryan Braswell ("Braswell") alleges that Defendants Gary Somers ("Somers") and Shoreline Fire Department ("Shoreline") denied him procedural due process rights secured by the Fourteenth Amendment when Braswell lost his position with Shoreline as a paramedic and was reassigned to his former position as a firefighter. Braswell also alleges that Somers tortiously interfered with his employment. Pending before the Court are cross motions for summary judgment by all parties, motions by each defendant to amend its answer, and various motions in limine by all parties to exclude evidence.

For the reasons set forth below, the Court holds that Braswell does not have a property or liberty interest protected by the Fourteenth Amendment, and Somers's actions did not

ORDER
PAGE - 1

constitute tortious interference as a matter of law. Accordingly it GRANTS Defendants' motions for summary judgment (Dkt. #s 63, 71) and DENIES Plaintiff's Motion for Partial Summary Judgment (Dkt. #59). All other motions are stricken as moot.

## II. DISCUSSION

### A. Background

Braswell was first employed by Shoreline in 1987 as a firefighter. In 2002, Braswell applied to Shoreline's paramedic training program. To be accepted into the program, an applicant must have been a firefighter with Shoreline for at least five years, pass a written test and undergo an interview process. Braswell was accepted into the program and attended training through the University of Washington, which included classroom teaching and practical experience. After 10 months of training, Braswell took and passed his final exams and became certified as a paramedic.

Paramedics in King County, where Shoreline Fire Department is located, are unique in that they are certified through the University of Washington rather than the Department of Health. A certificate from either entity qualifies a recipient to practice as a paramedic. The certificates are valid for two years after which a paramedic must recertify. Under Washington law, even though an individual is certified as a paramedic, he cannot practice paramedicine unless he works under the license of a qualified medical doctor.

Paramedics employed by Shoreline work under the medical license of Dr. Somers, one of the defendants here. Somers is a Program Medical Director for King County Emergency Medical Services and is in charge of the Shoreline area. There are five other Program Medical Directors who oversee paramedics in other areas in King County. All six of the Program Medical Directors are supervised by the Medical Program Director, Dr. Eisenberg, who is employed at least in part by the University of Washington.

Braswell performed as a paramedic for Shoreline from 2003 until December 2005 when the incident occurred that gave rise to this lawsuit. On November 30, 2005, Braswell and his paramedic partner, Shawn White ("White") were dispatched to the residence of Tommy Davis

("Davis"), a patient who had called emergency services complaining of chest pain. When Braswell arrived at the residence, he noticed that Davis was heavily tattooed. Mr. Davis indicated to Braswell and White that he was an ex-convict who had served time in prison. As part of his examination of Davis, he asked his patient whether he had used any recreational drugs that evening. Davis became agitated. Braswell administered a lung exam and instructed Davis to breathe deeply. However, Davis would not or could not comply. Braswell bent down and spoke directly into Davis's face, instructing him repeatedly to breathe deeply. After multiple requests, Davis became angry and asked Braswell what his problem was. Braswell repeated his instructions and asked that the patient give him a "little less attitude."

This led to a verbal altercation. Davis stood up and threw a file folder on a desk with such force that papers and objects flew off the desk. Davis told the paramedics to leave. Braswell asked Davis to fill out a release form stating that he did not consent to treatment. Davis stated in clear, albeit profane language that he would not sign the form. In the course of the altercation Braswell asked if he should call the police, and Davis responded that he would give Braswell a reason to throw him (Davis) in jail. Feeling physically threatened and suspecting that Davis, who was rummaging through desk drawers, might be looking for a weapon, Braswell and White left without treating Davis or obtaining a release form.

On the day following the incident, Braswell met with his fire department supervisors and two union representatives to discuss the incident. Several days later on December 6, 2005, Braswell met with the chief and deputy chief of the fire department and Dr. Somers. Dr. Somers, after having reviewed written statements from witnesses, stated that Braswell had an anger management problem, that he failed to identify medically significant symptoms in the patient, and that he abandoned the patient. He told Braswell that Braswell was no longer authorized to practice under his medical license.

Because Somers had revoked Braswell's ability to practice under his medical license, Braswell could not legally practice paramedicine. Therefore, Shoreline reassigned Braswell from paramedic to firefighter. Shoreline froze Braswell's salary at the higher paramedic level until his firefighter salary would catch up to that level. Braswell's paramedic certification was

not revoked. It lapsed in 2007 when Braswell failed to recertify. Braswell brought this action alleging that his due process rights were violated.

**B. Standard of Review**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FRCP 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson, 477 U.S. at 248*. The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994). Conclusory or speculative testimony is insufficient to raise a genuine issue of fact. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995).

**C. Property Interest**

Braswell argues that he has a protectable property interest in his employment as a paramedic for Shoreline. In the seminal case *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, the Court defined the boundaries of "property interest" in the context of the Fourteenth Amendment:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.
> . . .
> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Roth*, 408 U.S. at 577.

Braswell contends that Washington law recognizes a property interest in employment for professionals and/or those with licenses or certification. He cites two Washington Supreme Court cases, *Nguyen v. Dep't. of Health Medical Quality Assurance Comm'n*, 144 Wash. 2d 516 (2001), and *Ongom v. Dep't. of Health, Office of Prof. Standards*, 159 Wash. 2d 132 (2006), for support. These cases hold that the state must prove violations by clear and convincing evidence before revoking a medical license (*Nguyen*) or nursing license (*Ongom*). They recognize that an "individual's interest in a professional license is profound," *Nguyen*, 144 Wash. 2d at 527, and that although the licenses may be different, "nurses and medical doctors have an identical property interest in licenses that authorize them to practice their respective professions," *Ongom*, 159 Wash. 2d at 139.

However, neither case stands for the proposition that an individual, by virtue of being licensed, has a property interest in a specific employment position or with a specific entity. No case so holds. In fact, if such a proposition were true, government agencies could not fire attorneys, hospitals or clinics could not terminate at-will doctors or nurses, and federal judges could not fire at-will law clerks without due process so long as they are bar certified. This of course is not the law. *See e.g.*, *Allen v. City of Beverly Hills*, 911 F.2d 367 (9th Cir. 1990) (City Attorney had no constitutionally protected property interest in employment with the city); *Ritter v. Bd. of Comm'rs of Adams County Pub. Hosp. Dist. No. 1*, 96 Wash. 2d 503, 508 (1981) ("Respondent does not have a constitutional right to practice in a public hospital simply because he is a licensed physician.").

Although no Washington court has explicitly held as much, it is fair to assume that *Ongom* would be extended to recognize a property right in a paramedic's certificate. But in this case, Braswell's certificate was not revoked. The certificate that Braswell maintained would have allowed him to practice paramedicine at a different fire department.

In the alternative, Braswell argues that he had a "legitimate expectation of continued employment" with Shoreline because, prior to Braswell, no paramedic at Shoreline had been removed from paramedic duty in a similar manner. (Dkt. #59 at 14). However, Braswell admits that nothing in his contract, a collective bargaining agreement with his union, gives

ORDER
PAGE - 5

him an entitlement to employment. A "unilateral expectation" of continued employment is not a protectable interest. *Roth*, 408 U.S. at 577.[1]

### D. Liberty Interest

Braswell argues that he has a liberty interest in continued employment with Shoreline. Courts have recognized a liberty interest in employment in two situations: (1) foreclosure of employment in a chosen occupation, and (2) reputational harm or stigma. First, individuals have a liberty interest in pursuing the occupation of their choice. *Guzman v. Shewry*, 552 F.3d 941, 954 (9th Cir. 2009). There is a liberty interest in medical or nursing licenses because without these licenses, one cannot practice as a doctor or nurse. *See Ongom*, 159 Wash. 2d at 139; *Nguyen*, 144 Wash. 2d at 527. The liberty interest in pursuing a chosen occupation, however, is not implicated in this case. Braswell's certificate was not revoked. Braswell was not foreclosed from public employment. Nor was he foreclosed from seeking employment as a paramedic in other departments under a different medical director. "It stretches the concept of liberty too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Roth*, 408 U.S. at 475; *see also Cafeteria & Rest. Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895-96 (no liberty interest implicated when short-order cook was barred from working at a specific military base because she "remained entirely free to obtain employment . . . with any other employer.").

Secondly, a liberty interest can be implicated where the State, in the course of termination, stigmatizes an individual or damages his reputation in the community. *See, e.g.*, *Guzman*, 552 F.3d at 955. For reputational harm to rise to a constitutional magnitude requiring due process, it must "seriously damage [a plaintiff's] standing and associations in his community" either because it involves a charge of "dishonesty" or "immorality" or labels

---

[1] In Roth, the Court suggested in a footnote that a property interest could exist in some circumstances where an employer's policies exhibit a "common law of re-employment." The evidence produced in this case, however, comes far short of such a showing that and presents no genuine issue of material fact.

ORDER
PAGE - 6

a plaintiff such that he is completely prevented from practicing his chosen profession. *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 365-66 & n.13 (9th Cir. 1976) (quoting *Roth*, 408 U.S. at 573). However, "[l]iberty is not infringed by a label of incompetence, the repercussions of which primarily affect professional life, and which may well force the individual down one or more notches in the professional hierarchy." *Stretten*, 537 F.2d at 366. This circuit "distinguish[es] between a stigma of moral turpitude, which infringes a liberty interest from incompetence or inability to get along with others, which does not." *Roley v. Pierce County Fire Prot. Dist. No. 4*, 869 F.2d 491, 496 (9th Cir. 1989); *compare Campanelli v. Bockrath*, 100 F.3d 1476, 1480-81 (9th Cir. 1995) (coach fired for verbally abusing players met stigma requirement because a jury could conclude the charges involved immoral conduct and characterized the coach as mentally unbalanced), *and Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 778 & n.7 (9th Cir. 1982) (school teacher accused of improper conduct involving minor females had liberty interest in reputation), *with Loehr v. Ventura County Comm. Coll. Dist.*, 743 F.2d 1310, 1317-18 (9th Cir. 1984) (publication that district superintendant was terminated for incompetence did not trigger a liberty interest), *and Gray v. Union County Intermediate Educ. Dist.*, 520 F.2d 803, 806 (9th Cir. 1975) (public statements that teacher was insubordinate, incompetent, aggressive, and hostile toward authority did not violate a liberty interest because they did not concern dishonesty or immorality or seriously damage ability to seek other employment opportunities).

To establish a protected liberty interest, not only must a plaintiff establish that the charges against him are sufficiently stigmatizing, he must also show that (1) the accuracy of the charge is contested, (2) the charge was publically disclosed, and (3) the charge was made in connection with the termination of employment. *Guzman*, 552 F.3d at 955. In this case, the Court need not reach the question of whether the incident involved charges of immorality as opposed to mere incompetence because no statements regarding the incident were made public. Dr. Somers stated that Braswell might have an anger management problem, but he did so in a closed meeting with only Braswell and his supervisors in attendance. *See Bishop v. Wood*, 426 U.S. 341, 348-49 (reasons for termination stated in a private meeting did not

impact a liberty interest). He made similar statements at a subsequent meeting with union officials. However, because the union officials attended the meeting on Braswell's behalf, the meeting was an internal discussion, not publication. In any case, statements at that meeting were not made in connection with termination because the meeting occurred months after Braswell was fired.

Braswell argues that as a practical matter he is unable to gain employment as a paramedic after being terminated under the circumstances in this case. He assumes that Dr. Somers will not write him a favorable recommendation and that without one, nobody will hire him. Shoreline's fire chief gave deposition testimony that in his opinion it would be unlikely that Braswell would be hired as a paramedic elsewhere given the circumstances. In the absence of a legal barrier to employment or stigmatizing public statements, however, this does not implicate a constitutionally protected liberty interest. Braswell has no constitutional right to a positive recommendation, or as explained above, a right not to be terminated. "Nearly any reason assigned for dismissal is likely to be to some extent a negative reflection on an individual's ability, temperament, or character. But not every dismissal assumes a constitutional magnitude." *Gray*, 520 F.2d at 806. Braswell does not have a liberty interest mandating due process protection.

### E. Tortious Interference with Employment

To prove tortious interference under Washington law, a plaintiff must show: (1) a business expectancy, (2) knowledge of the relationship, (3) intentional interference which results in the termination of the expectancy, (4) improper purpose or means, and (5) damages. *Woody v. Stapp*, 146 Wn. App. 16, 23 (2008). Braswell has submitted insufficient evidence to meet his burden of proof that Dr. Somers acted with "improper purpose" in revoking Braswell's use of his medical license. His argument, at base, is that Dr. Somers acted with an improper purpose because he deprived Braswell of his property and liberty interests in employment with Shoreline. Since Braswell has no protectable interests in his employment with Shoreline, this cannot be the basis for a tortious interference claim. The declarations and

depositions in the record indicate that Dr. Somers revoked Braswell's privilege to use Dr. Somers's license because Dr. Somers thought Braswell's actions on the night of the incident constituted poor medical care and could subject Dr. Somers to criminal or civil liability. Such a purpose is not improper, and the tortious interference claim must fail as a matter of law.

### III. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendants' Motions for Summary Judgment (Dkt. #s 63, 71) are GRANTED.

(2) Plaintiff's Motion for Partial Summary Judgment (Dkt. #59) is DENIED.

(3) All other pending motions are stricken as moot. (Dkts. #s 74, 76, 78, 81, 85, 102, 123, 132)

(4) This action is DISMISSED. The Clerk is directed to close this case.

(5) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 20 day of October, 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE