1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
9                                  AT SEATTLE

10   BRYAN BRASWELL, a married person              CASE NO. C08-924-RSM
     but filing in his individual capacity,
11                                                 ORDER GRANTING DR. SOMERS'
                          Plaintiff,               MOTION FOR SUMMARY
12                                                 JUDGMENT
            v.
13
     SHORELINE FIRE DEPARTMENT,
14   formerly known as KING COUNTY FIRE
     DISTRCT NO. 4, and GARY SOMERS,
15
                          Defendants.
16

17

18                              **I. INTRODUCTION**

19          Plaintiff Bryan Braswell, a firefighter employed by Defendant Shoreline Fire Department

20   ("Shoreline"), who formerly practiced as a paramedic with Shoreline under Defendant Gary

21   Somers' medical license, filed this action under 42 U.S.C. § 1983.  The matter comes before the

22   Court upon Dr. Somers' Motion for Summary Judgment (Dkt. No. 213).  For the reasons set

23   forth below, the motion is GRANTED.

24

ORDER GRANTING DR. SOMERS' MOTION FOR SUMMARY JUDGMENT - 1

## II. BACKGROUND

Braswell was first employed by Shoreline in 1987 as a firefighter.  In 2003, he obtained a paramedic certification that qualified him to practice as a paramedic.  *See* Wash. Rev. Code § 18.71.200(3).  A paramedic certificate is valid for three years, after which time a paramedic must recertify.  *Id.*; § 18.71.205(2), (3); Wash. Admin. Code § 246-976-144(1).  Under Washington law, even though an individual is certified as a paramedic, he or she cannot practice paramedicine except while working under the license and supervision of a qualified medical doctor.  Wash. Rev. Code §§ 18.71.030(13), 18.71.205(6); Wash. Admin. Code § 246.976.144(1).  *See also* Wash. Rev. Code § 18.71.021 ("No person may practice or represent himself … as practicing medicine without first having a valid license to do so.").  Thus, paramedics in Washington provide medical treatment under the medical direction and supervision of a licensed physician.

The Department of Health certifies a Medical Program Director for each county in Washington.  Wash. Rev. Code § 18.71.205(4).  In turn, the Program Director – in this case, Dr. Mickey Eisenberg –delegates certain authority to physicians to allow for closer oversight.  Wash. Admin. Code § 246-976-920.  The physician-delegates contract directly with each fire department they supervise.

In 2005, Dr. Somers was the program Medical Director for Shoreline, serving as Dr. Eisenberg's delegate for that department.  Dr. Somers' contractual duties consisted of two major components: (1) performing the specific duties delegated to him by Dr. Eisenberg and (2) providing medical representation for Shoreline's paramedic program.  Both categories of duties described in Dr. Somers's contract were consistent with Dr. Somers's role as a supervisor and director of the medical aspects of Shoreline's paramedicine program.  *See* Dkt. No. 223 ("King

County Medical Director Job Description"), pp. 8 & 9 (listing duties such as providing medical control and direction to paramedic personnel in their medical duties, supervising training of paramedic personnel, recommending disciplinary action, interfacing with area hospitals, attending medical director committee meetings, assisting the King County Medical Program Director in determining certification and denial of certification of paramedic personnel, and others).

On November 30, 2005, Plaintiff and his paramedic partner, Shawn White, were dispatched to the residence of Tommy Davis, a patient who had called emergency services complaining of chest pain.  As part of his examination, Plaintiff asked Mr. Davis whether he had used any recreational drugs that evening.  Mr. Davis became agitated.  Plaintiff administered a lung exam and instructed Mr. Davis to breathe deeply.  However, Davis would not or could not comply.  Plaintiff bent down and spoke directly into Davis's face, instructing him repeatedly to breathe deeply.  After multiple requests, Mr. Davis became angry and asked Braswell what his problem was.  Braswell repeated his instructions and asked that the patient give him a "little less attitude."

The exchange between Plaintiff and Mr. Davis led to a verbal altercation.  Mr. Davis stood up and threw a file folder on a desk with such force that papers and objects flew off the desk.  Davis told the paramedics to leave.  Plaintiff asked Davis to fill out a release form stating that he did not consent to treatment.  Mr. Davis responded in profanities that he would not sign the form.  In the course of the altercation Plaintiff asked if he should call the police, and Mr. Davis responded that he would give Plaintiff a reason to throw him in jail.  Feeling physically threatened and suspecting that Mr. Davis, who was rummaging through desk drawers, might be

1  looking for a weapon, Plaintiff and his partner left without treating Davis or obtaining a release

2  form.

3       The next day, Plaintiff met with his fire department supervisors and two union

4  representatives to discuss the incident.  Six days later on December 6, 2005, Plaintiff met with

5  the chief, the deputy chief, and Dr. Somers.  Dr. Somers, after having reviewed written

6  statements from Braswell and all others who had been on the call, determined that Plaintiff had

7  failed to identify medically significant symptoms exhibited by the patient, failed to follow

8  protocol to secure the scene, abandoned the patient, perceived the event very differently than

9  others present at the scene, and had refused to acknowledge that his handling of the call was

10  significant and inappropriate.

11       At the end of the December 6 meeting, Dr. Somers notified Plaintiff that based on the

12  available information, Dr. Somers had no choice to but to withdraw his authorization for Plaintiff

13  to practice under his medical license.  Later that day, Dr. Somers wrote a letter to Chief Mehlert

14  confirming his decision to withdraw authorization for Plaintiff to practice under his license.  The

15  letter read:

16       After investigation and careful review of MIRF incident #05-7879, including
        documentation by all personnel on the call, as well as extensive discussion with
17       you and DC Dave Jones, I have concluded that Paramedic Bryan Braswell should
        be immediately removed from his duties as a paramedic.  Regretfully, I
18       withdraw his authorization to practice paramedicine under my medical license.

19

20  Dkt. No. 64-2, p. 4.  Dr. Somers then wrote a second letter to Dr. Leonard Cobb, who was the

21  head of University of Washington training program, Plaintiff's certifying entity.  The letter to Dr.

22  Cobb provided:

23

24       After investigation and careful review of MIRF incident #05-7879, including
        documentation by all personnel on the call, as well as extensive discussion with

1  Shoreline Fire Chief Ron Mehlert and Deputy Chief Dave Jones, I concluded
   that Paramedic Bryan Braswell should be removed from his duties as a
2  paramedic. Regretfully, I withdrew his authorization to practice
   paramedicine under my medical license, effective December 6th, 2005.
3

4  *Id.* at p. 5. Finally, Dr. Somers sent a copy of the letter to Dr. Cobb to his supervisor, King

5  County Medical Program Director, Dr. Eisenberg. Dkt. No. 65, ¶ 14. The two letters written by

6  Dr. Somers were placed in Plaintiff's personnel file.

7  Because Somers had revoked Braswell's ability to practice under his medical license,

8  Braswell could not legally practice paramedicine with Shoreline. *See* Wash. Rev. Code §§

9  18.71.030(13), 18.71.205(6). Therefore, Shoreline reassigned Braswell from paramedic to

10 firefighter. Shoreline froze Braswell's salary at the higher paramedic level until his firefighter

11 salary caught up to that level.[1]

12 A letter from Chief Mehlert to Plaintiff dated January 11, 2006 regarding the incident

13 was placed in Braswell's personnel file. The letter stated in pertinent part:

14  Bryan Braswell was the lead paramedic on incident #05-7879, therefore
    responsible for patient care and scene control. The relationship between Bryan
15  and the patient became adversarial and then hostile. Control of the scene was not
    passed to Bryan's partner or any other member of the fire department present.
16  Bryan directed all personnel present to vacate the patient's resident i.e. the scene.
    Bryan did not notify the on duty MSO of the unusual incident or call an
17  ambulance for the patient before leaving the scene. The patient did not receive
    appropriate medical care and was left alone at the scene.

18 Dkt. No. 223, Ex. A. The letter also informed Plaintiff that some of his co-workers found him

19 "intimidating, intense, and/or outright angry" and that Plaintiff would be required to seek an

20 assessment of his personality profile and develop a new conflict management style. *Id.*

21 Plaintiff brought this action, alleging that Defendants violated his liberty and property

22 interest in his right to practice as a licensed paramedic in the state of Washington and with

23 _____

24  [1] Braswell's paramedic certification was not revoked, but it lapsed in 2007.

ORDER GRANTING DR. SOMERS' MOTION FOR SUMMARY JUDGMENT - 5

1   Shoreline Fire Department, his liberty interest in future employment because of the stigma

2   created by Defendants which forecloses freedom to take advantage of other employment

3   opportunities or the same employment opportunities, and the liberty interest which plaintiff

4   possesses in his name and reputation, guaranteed by the Due Process Clause and Equal

5   Protection Clause of the 14th Amendment of the United States Constitution in violation of 42

6   U.S.C. § 1983, and by Article 1, Section 3 and Article 1, Section 12 of the Washington State

7   Constitution.  *See* Dkt. No. 1.  Plaintiff also brought a claim for tortuous interference against Dr.

8   Somers, individually.  *Id.*

9       Previously, this court dismissed Plaintiff's claims in their entirety on summary judgment,

10  holding that Plaintiff had neither a property nor a liberty interest in his job and that, as a matter

11  of law, Dr. Somers did not commit tortuous interference.  *See* Dkt. No. 147.  Plaintiff timely

12  appealed and the Ninth Circuit affirmed, except with respect to the liberty interest aspect of

13  Plaintiff's § 1983 claim.  Specifically, the Ninth Circuit wrote,

14          Chief Marcus Kragness provided deposition testimony that Plaintiff would not
            likely be hired as a paramedic by any other fire department because of his
15          removal from the shoreline paramedic position.  That testimony raises a triable
            issue of fact as to whether Plaintiff has suffered a deprivation of his liberty
16          interest in pursuing his paramedical career.

17  *Braswell v. Shoreline Fire Dept.,* 622 F.3d 1099, 1103 (9th Cir. 2010).

18      On remand, Dr. Somers now moves for summary judgment dismissing Plaintiff's remaining

19  claim on the basis of qualified immunity.  *See* Dkt. No. 213.  Neither this court nor the Ninth

20  Circuit has previously considered whether Dr. Somers is entitled to qualified immunity.  *See*

21  *Braswell,* 622 F.3d at 1103, n. 2 ("We note that the district court concluded only that Plaintiff had

22  no constitutional right and that Dr. Somers did not tortuously interfere with Plaintiff's

23  employment.  It did not consider whether Dr. Somers might be entitled to qualified immunity on

24

the remaining federal claim on the ground that the law was not clearly established, nor did the court rule on other legal issues that the parties raised.  Those issues remain open on remand.").

**Discussion**

1. <u>Summary Judgment Standard</u>

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).   In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing F.D.I.C. v. O'Melveny & Myers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994)).  Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Myers*, 969 F.2d at 747.  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a party ... fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Whether to consider the fact undisputed for the purposes of the motion is at the court's discretion and the court "may choose not to consider the fact as undisputed, particularly if the court knows of record materials that should be grounds for genuine dispute." Fed. R. Civ. P. 56, advisory committee note of 2010.  On the other hand, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252.

2. <u>Analysis</u>

Dr. Somers seeks dismissal of all of Plaintiffs claims against him on the basis of qualified immunity.  Whether Dr. Somers is entitled to qualified immunity requires a two-step analysis. First, the Court must determine whether Dr. Somers, as a private physician, is within the class of persons to whom qualified immunity is afforded.  *See, e.g., Jensen v. Lane County,* 222 F.3d 570 (9th Cir. 2000) (holding that a private physician in Oregon operating under contract with county was a state actor but not entitled to qualified immunity).  Second, if Dr. Somers may assert qualified immunity, the Court must decide whether Dr. Somers is entitled to immunity under the circumstances of this case.

a.  *Whether Dr. Somers May Assert Qualified Immunity*

To determine whether or not Dr. Somers is within the class of persons accorded qualified immunity from suit under § 1983, we look (1) "to the general principles of tort immunities and defenses applicable at common law," and (2) to "the reasons we have afforded protection from suit under § 1983".  *Filarsky v. Delia*, 132 S.Ct. 1657, 1662 (2012) (citing *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976)).  With respect to the second prong of the analysis, the traditional justifications for affording government officials immunity include: (1) "protecting the public from unwarranted timidity on the part of public officials"; (2) ensuring that talented candidates are not deterred from entering public service; and (3) preventing the distraction to public officials caused by lawsuits. *Richardson v. McKnight,* 521 U.S. 399, 409–411 (1997); *see also Jensen,* 222 F.3d at 577; *Filarskey,* 132 S.Ct. at 1665.

Plaintiff argues that, under *Jensen,* a private physician providing medical services to a government entity pursuant to a contract with that entity is not entitled to qualified immunity. *See* Dkt. No. 222.  *Jensen* involved a § 1983 action for unlawful arrest and restraint against a private physician in connection with the plaintiff's temporary mental health detention. 222 F.3d

at 573. There the Ninth circuit found that there was no firmly rooted tradition of immunity for doctors asked by the government to make a decision to commit persons suspected of mental illness and that traditional justifications for extending immunity to persons performing government functions did not apply. *Id.* at 576-579.

In deciding *Jensen,* the Ninth Circuit relied heavily on *Richardson v. McKnight,* a case in which the Supreme Court held that prison guards operating a private prison facility pursuant to contract were not entitled to assert qualified immunity. 521 U.S. 399, 409–411 (1997). *Richardson* found that the prison employers resembled employees of private firms more than government employees because marketplace pressures provided the firm 'with strong incentives to avoid overly timid, insufficiently vigorous, unduly fearful, or 'nonarduous' employee job performance" and contractual provisions such as employee indemnification allowed the firm to "respond to those market pressures through rewards and penalties that operate directly upon its employees." 521 U.S. at 410-411. Thus, in *Jensen,* the Ninth Circuit looked to whether the physician's employer, Psychiatric Associates ("PA"), was similarly "engaged in a complex administrative task" wherein "the potential for insurance, indemnification agreements, and higher pay all may operate to encourage qualified candidates to engage in this endeavor and to discharge their duties vigorously." *Id.* at 578 (citing *Richardson,* 521 U.S. at 408-411). Finding that PA was such an employer, the *Jensen* court held that the PA physician was not entitled to assert qualified immunity.

*Jensen* suggests that there is a colorable argument that qualified immunity might not extend to a private physician such as Dr. Somers. However, Dr. Somers' contract is qualitatively different than that in *Jensen.* The physician in *Jensen* was a contract psychiatrist affiliated with a group called Psychiatric Associates ("PA"), "a privately organized group of psychiatrists

1   providing services to the government pursuant to contract" that conducted "a number and variety
2   of tasks over the term of a three-year contract." *Id.* at 577, 578.  PA was "responsible for
3   accepting referrals, making admission and discharge decisions, providing on-going psychiatric
4   care, and participating in at least some hospital policy-making." *Id.* at 578.

5       Here, the privatization and market forces arguments that the Ninth Circuit found
6   persuasive in *Jensen* and the Supreme Court relied upon in *Richardson* play little to no role.  Dr.
7   Somers had a contract directly with Shoreline to carry out responsibilities delegated by Dr.
8   Eisenberg pursuant to a state statute.  Dkt. No. 223, Ex. A, p. 5; Wash. Rev. Code §
9   18.71.205(4); Wash. Admin. Code § 246-976-920.  The contract to which Dr. Somers is a part is
10  not an especially lucrative one involving multiple facets of administration and millions of dollars
11  as in *Richardson,* but a modest part-time contract for supervisory services.  Competition for such
12  a contract would not be nearly as robust.[2]  Moreover, "insurance, indemnification agreements,
13  and higher pay" would appear no more likely to address problems of timidity and discouraging
14  qualified candidates than they would if Dr. Somers were a full-time employee of Shoreline.  *See*
15  *Jensen,* 222 F.3d at 578.  After all, since Dr. Somers is contracting as an individual, such
16  safeguards would need to be provided by Shoreline itself.

17      Indeed, the Supreme Court has recently confirmed that the analysis in *Richardson* should
18  not be imported to the typical case in which a private individual is hired by the government to
19  carry out government work.  *See Filarsky,* 132 S.Ct. 1657.  In *Filarsky,* the Supreme Court held
20  that a private attorney hired by a city to conduct an internal affairs investigation into a
21  firefighter's extended sick leave was entitled to assert qualified immunity.  132 S.Ct. at 10.

22

23  _____

24  [2]  Dr. Somers was entitled to $32,784 in compensation in 2005 for the services he performed
    under his contract with Shoreline.

1   *Filarsky* looked to whether the common law traditionally drew "a distinction between public

2   servants and private individuals engaged in public service in according protection to those

3   carrying out government responsibilities." *Id.* at 1663.  It ultimately found that "examples of

4   individuals receiving immunity for actions taken while engaged in public service on a temporary

5   or occasional basis are as varied as the reach of government itself" and held that "immunity

6   under § 1983 should not vary depending on whether an individual working for the government

7   does so as a full-time employee, or on some other basis." *Id.* at 1665.

8          In looking to policy justifications for conferring qualified immunity, *Filarsky*

9   distinguished *Richardson* and carefully confined it to its factual predicate:

10         *Richardson* was a self-consciously "narrow[ ]" decision. The Court made clear
           that its holding was not meant to foreclose all claims of immunity by private
11         individuals. Instead, the Court emphasized that the particular circumstances of
           that case—"a private firm, systematically organized to assume a major lengthy
12         administrative task (managing an institution) with limited direct supervision by
           the government, undertak[ing] that task for profit and potentially in competition
13         with other firms"—combined sufficiently to mitigate the concerns underlying
           recognition of governmental immunity under § 1983. Nothing of the sort is
14         involved here, or in the typical case of an individual hired by the government to
           assist in carrying out its work.

15  *Id.* at 1667-1668 (internal citations omitted).  Thus, in the typical case of an individual hired by

16  the government to carry out a governmental function, the Supreme Court found that the

17  traditional justifications for affording immunity– attracting talented candidates, shielding

18  individuals from the distraction of litigation, and avoiding unwarranted timidity – all apply.  *Id.*

19  at 1665-66.

20         Here, as in *Filarsky,* Dr. Somers is an individual hired by the government to assist in

21  carrying out its work.  As indicated above, traditional justifications for according qualified

22  immunity to government officials apply equally to Dr. Somers in his position as medical director

23  for Shoreline as they would if Dr. Somers were a government employee.  Further, Dr. Somers'

24

1  position as a part-time worker hired under contract with the Shoreline Fire Department does not

2  place him within the "narrow" category of private individuals acting under color of law who are

3  not entitled to assert qualified immunity.  *Cf. Richardson,* 521 U.S. 399.  Accordingly, Dr.

4  Somers is entitled to assert qualified immunity.

5        *b.  Clearly Established Federal Law*

6        Since Dr. Somers is within the class of persons who may assert qualified immunity, the

7  Court must decide whether qualified immunity applies in this case.  Qualified immunity protects

8  government officials performing discretionary functions "from liability for civil damages insofar

9  as their conduct does not violate clearly established statutory or constitutional rights of which a

10 reasonable person would have known."  *Lytle v. Wondrash,* 182 F.3d 1083, 1086 (9th Cir. 1999)

11 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  To be clearly established, the law must

12 be "sufficiently clear that a reasonable official would understand that what he is doing violates

13 that right."  *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).  The doctrine of qualified

14 immunity safeguards "all but the plainly incompetent or those who knowingly violate the law.  If

15 officers of reasonable competence could disagree on the issue of whether a chosen course of

16 action is constitutional, immunity should be recognized."  *Lytle*, 182 F.3d at 1087 (citing *Malley*

17 *v. Briggs*, 475 U.S. 335, 341 (1986)) (internal quotations omitted).

18        It is well established that the fourteenth amendment's guarantee of procedural due process

19 applies when a constitutionally protected liberty or property interest is at stake. *Board of Regents*

20 *v. Roth*, 408 U.S. 564, 569 (1972).  It is also well established that a person's liberty interest is

21 implicated when the state makes a charge against a person "that might seriously damage his

22 standing and association in his community."  *Id.* at 573.  In such a case, "[t]he procedural

23 protections of due process apply if the accuracy of the charge is contested, there is some public

24 disclosure of the charge, and it is made in connection with the termination of employment...."

1    *Vanelli v. Reynolds School District No. 7,* 667 F.2d 773, 777-78 (9th Cir.1982) (emphasis

2    added).

3        In *Cox v. Roskelly,* the plaintiff sued county officials after the county released his

4    termination letter to a local newspaper pursuant to a public records request.   359 F.3d 1105,

5    1110 (9th Cir. 2004).  The letter stated that the plaintiff had been fired from his position as Risk

6    Manager for failing to meet his responsibilities and exhibiting poor managerial judgment in

7    overseeing vehicle damage liability claims related to a botched road project.  *Id.*  The letter also

8    listed examples of questionable conduct within these two areas, such as the plaintiff's close

9    personal connection with the owner of the repair shop that was handling the repairs.  *Id.* at 1108.

10   The *Cox* court denied qualified immunity to the county officials who were involved in the

11   investigation and terminated the plaintiff, noting that the standard originally set forth in *Vanelli*

12   was well-established. Moreover, since Washington state law provided that a personal document

13   is subject to disclosure if it relates to the conduct of the government and performance of

14   governmental functions, placing a document in a personnel file constituted publication.  *Id.* at

15   1113 ("Defendants knew or should have known that there would be 'some public disclosure' of

16   the charges contained in the termination letter of a public employee embroiled in a dispute of

17   public interest. By 1998, it was clearly established that such public disclosure meant that the

18   procedural protections of due process applied.").  The court held that the public officials were

19   not entitled to qualified immunity because the case law addressing the liberty interest in one's

20   chosen profession, combined with Washington's public disclosure law, "preclude[d] a viable

21   'head-in-the-sand' defense on the part of County officials."  *Id.*

22       Plaintiff argues that under *Cox,* Dr. Somers is not entitled to qualified immunity from

23   liability stemming from his withdrawal of authorization for Plaintiff to practice under his

24

1  medical license.  The Court disagrees.  *Cox* specifically addressed whether the placement of

2  stigmatizing information in a public employee's personnel file constituted publication warranting

3  a name-clearing hearing under the Due Process clause of the Fourteenth Amendment.  *See Cox*,

4  359 F.3d at 1112.  Here, Dr. Somers did not place anything in Plaintiff's personnel file. Although

5  potentially stigmatizing information was placed in Plaintiff's personnel file during the course of

6  his discharge, Dr. Somers was not Plaintiff's employer, did not have access to Plaintiff's

7  personnel file, and was not responsible for the placement of letters in the file.

8         Moreover, the letters written by Dr. Somers were benign.  They described only the fact of

9  Dr. Somers' decision to withdraw Plaintiff's authority to practice under Dr. Somers' license.

10  Any potentially disparaging information that might place Plaintiff's cause of action within the

11  ambit of *Cox* was written by Chief Mehlert, not Dr. Somers.  Hence, the central component of

12  *Cox* – that a public official working in a state where a personnel file may be subject to public

13  disclosure should know better than to place stigmatizing information about an employee in such

14  a file in connection with the employee's termination – is not present in the case with respect to

15  Dr. Somers.

16         The Court acknowledges that "[i]n order to find that the law was clearly established ... we

17  need not find a prior case with identical, or even 'materially similar' facts. Our task is to

18  determine whether the preexisting law provided the defendants with 'fair warning' that their

19  conduct was unlawful." *Flores v. Morgan Hill Unified Sch. Dist.,* 324 F.3d 1130, 1136-37 (9th

20  Cir.2003) (internal citation omitted).  However, Plaintiff has failed to identify a single precedent

21  that would suggest, either explicitly or by implication, that a private citizen working on a part-

22  time basis with a public entity to ensure that the public entity's employees meet specified

23  standards of conduct is also required to ensure that any public employee that fails to meet those

24

ORDER GRANTING DR. SOMERS' MOTION FOR SUMMARY JUDGMENT - 14

1  standards receives a name-clearing hearing or other procedural protections.  Dr. Somers is

2  entitled to qualified immunity and Dr. Somers's motion for summary judgment is hereby

3  GRANTED.

### III. CONCLUSION

5       Having considered Dr. Somers' motion for summary judgment, Plaintiff's response

6  thereto, and the reply, all exhibits and declarations attached thereto, and the remainder of the

7  record, the Court hereby finds and orders:

8     (1) Dr. Somers' motion for summary judgment (Dkt. No. 213) is hereby GRANTED.

9     (2) The Clerk of the Court is directed to forward a copy of this order to all counsel of record.

10      Dated May 22, 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE