UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRYAN BRASWELL, a married person but filing in his individual capacity<br><br>Plaintiff,<br><br>v.<br><br>SHORELINE FIRE DEPARTMENT, formerly known as KING COUNTY FIRE DISTRICT NO. 4, and GARY SOMERS,<br><br>Defendants. | CASE NO. C08-00924-RSM<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

**I. INTRODUCTION**

Plaintiff Bryan Braswell, a firefighter employed by Defendant Shoreline Fire Department ("Shoreline") who formerly practiced as a paramedic with Shoreline under Defendant Gary Somers' medical license, filed this action under 42 U.S.C. § 1983. The matter comes before the Court upon motions for summary judgment filed by Defendant Shoreline Fire Department ("Shoreline") (Dkt. # 214) and the motion for partial summary judgment filed by Plaintiff Bryan

Braswell (Dkt. # 225). For the reasons set forth below, Shoreline's motion is GRANTED, Plaintiff's motion is DENIED, and Plaintiff's action is hereby dismissed.

## II. BACKGROUND

The parties are familiar with the claims and allegations underlying this case, and the Court summarizes them here only in brief. Braswell was first employed by Shoreline in 1987 as a firefighter. In 2003, he obtained a paramedic certification that qualified him to practice as a paramedic. *See* Wash. Rev. Code § 18.71.200(3). Under Washington law, even though an individual is certified as a paramedic, he or she cannot practice paramedicine except while working under the license and supervision of a qualified medical doctor. Wash. Rev. Code §§ 18.71.030(13), 18.71.205(6); Wash. Admin. Code § 246.976.144(1). *See also* Wash. Rev. Code § 18.71.021 ("No person may practice or represent himself … as practicing medicine without first having a valid license to do so."). Thus, paramedics in Washington provide medical treatment under the medical direction and supervision of a licensed physician.

The Department of Health certifies a Medical Program Director for each county in Washington. Wash. Rev. Code § 18.71.205(4). In turn, the Program Director – in this case, Dr. Mickey Eisenberg –delegates certain authority to physicians to allow for closer oversight. Wash. Admin. Code § 246-976-920. The physician-delegates contract directly with each fire department they supervise. In 2005, Dr. Somers was the program Medical Director for Shoreline, serving as Dr. Eisenberg's delegate for that department.

On November 30, 2005, Plaintiff and his paramedic partner, Shawn White, were dispatched to the residence of Tommy Davis, a patient who had called emergency services complaining of chest pain. As part of his examination, Plaintiff asked Mr. Davis whether he had used any recreational drugs that evening. Mr. Davis became agitated. Plaintiff administered a

lung exam and instructed Mr. Davis to breathe deeply. However, Davis would not or could not comply. Plaintiff bent down and spoke directly into Davis's face, instructing him repeatedly to breathe deeply. After multiple requests, Mr. Davis became angry and asked Braswell what his problem was. Braswell repeated his instructions and asked that the patient give him a "little less attitude."

The exchange between Plaintiff and Mr. Davis led to a verbal altercation. Mr. Davis stood up and threw a file folder on a desk with such force that papers and objects flew off the desk. Davis told the paramedics to leave. Plaintiff asked Davis to fill out a release form stating that he did not consent to treatment. Mr. Davis responded in profanities that he would not sign the form. In the course of the altercation Plaintiff asked if he should call the police, and Mr. Davis responded that he would give Plaintiff a reason to throw him in jail. Feeling physically threatened and suspecting that Mr. Davis, who was rummaging through desk drawers, might be looking for a weapon, Plaintiff and his partner left without treating Davis or obtaining a release form.

The next day, on December 1, 2005, Plaintiff met with his fire department supervisors and two union representatives to discuss the incident. At this meeting, Plaintiff was given copies of witness statements provided by the other paramedics on call during the incident, and was also given an opportunity to provide his side of the story. The meeting lasted forty-five minutes to an hour. On December 5, 2005, Plaintiff provided a written statement regarding the incident to Deputy Chief Jones. The statement related Plaintiff's version of events, which was substantially similar to the facts as summarized above.

The next day, Plaintiff met with Deputy Chief Jones, Dr. Somers, and Chief Mehlert. Prior to the meeting, Dr. Somers had reviewed Plaintiff's written statement and the written

statements of the three members of the engine crew that responded to the call, discussed the incident with Chief Mehlert and Deputy Chief Jones, and interviewed Plaintiff's partner, Shawn White. At the December 6, 2005 meeting, Dr. Somers asked Plaintiff what had happened and Plaintiff briefly explained his version of events. Dr. Somers then informed Plaintiff that he would no longer authorize Plaintiff to practice under his license. Dr. Somers determined that Plaintiff had failed to identify medically significant symptoms exhibited by the patient, failed to follow protocol to secure the scene, abandoned the patient, perceived the event very differently than others present at the scene, and had refused to acknowledge that his handling of the call was significant and inappropriate.

Later that day, Dr. Somers wrote a letter to Chief Mehlert confirming his decision to withdraw authorization for Plaintiff to practice under his license. Dr. Somers then wrote a second letter to Dr. Leonard Cobb, who was the head of University of Washington training program, Plaintiff's certifying entity. Finally, Dr. Somers sent a copy of the letter to Dr. Cobb to his supervisor, King County Medical Program Director, Dr. Eisenberg.

Because Somers had revoked Braswell's ability to practice under his medical license, Braswell could not legally practice paramedicine with Shoreline. *See* Wash. Rev. Code §§ 18.71.030(13), 18.71.205(6). Therefore, Shoreline reassigned Braswell from paramedic to firefighter. Shoreline froze Braswell's salary at the higher paramedic level until his firefighter salary caught up to that level.[1]

Braswell's employment is subject to a collective bargaining agreement ("CBA") between Shoreline and the International Association of Fire Fights, Local 1076. The CBA permits union members to grieve potential violations of the CBA through a formalized process that includes

---

[1] Braswell's paramedic certification was not revoked, but it lapsed in 2007.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 4

arbitration. Following Dr. Somers' withdrawal of Plaintiff's authorization to practice under Dr. Somers' medical license, the union and legal counsel for the union determined that Plaintiff did not have a greivable offense. *See* Dkt. No. 64 (R. White Dep. at 15). No other formal appeal mechanism existed and Plaintiff did not make any attempt to otherwise appeal Dr. Somers' decision or his reassignment to firefighter status.

Plaintiff brought this action, alleging that Defendants violated his liberty and property interest in his right to practice as a licensed paramedic in the state of Washington and with Shoreline Fire Department, his liberty interest in future employment because of the stigma created by Defendants which forecloses freedom to take advantage of other employment opportunities or the same employment opportunities, and the liberty interest which plaintiff possesses in his name and reputation, guaranteed by the Due Process Clause and Equal Protection Clause of the 14th Amendment of the United States Constitution in violation of 42 U.S.C. § 1983, and by Article 1, Section 3 and Article 1, Section 12 of the Washington State Constitution. *See* Dkt. # 1. Plaintiff also brought a claim for tortious interference against Dr. Somers, individually. *Id.*

Previously, this court dismissed Plaintiff's claims in their entirety on summary judgment, holding that Plaintiff had neither a property nor a liberty interest in his job and that, as a matter of law, Dr. Somers did not commit tortious interference. *See* Dkt. # 147. Plaintiff timely appealed and the Ninth Circuit affirmed, except with respect to the liberty interest aspect of Plaintiff's § 1983 claim. Specifically, the Ninth Circuit wrote,

> Chief Marcus Kragness provided deposition testimony that Plaintiff would not likely be hired as a paramedic by any other fire department because of his removal from the Shoreline paramedic position. That testimony raises a triable issue of fact as to whether Plaintiff has suffered a deprivation of his liberty interest in pursuing his paramedical career.

*Braswell v. Shoreline Fire Dept.,* 622 F.3d 1099, 1103 (9th Cir. 2010).

On remand, Dr. Somers moved for summary judgment on the basis of qualified immunity. The Court granted the motion, dismissing Plaintiff's claims against Dr. Somers. *See* Dkt. # 234. The Court now addresses pending motions for summary judgment filed by Plaintiff and by Defendant Shoreline.

### III. DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing F.D.I.C. v. O'Melveny & Myers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994)). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Myers*, 969 F.2d at 747. However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a party ... fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Whether to consider the fact undisputed for the purposes of the motion is at the court's discretion and the court "may choose not to consider the fact as undisputed, particularly if the court knows of record materials that should be grounds for genuine dispute." Fed. R. Civ. P. 56, advisory committee note of 2010. On the other hand, "[t]he mere existence of a scintilla of evidence in

support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252.

**B. Procedural Due Process**

Previously, on summary judgment, this Court did not reach the question of whether due process had been afforded to Plaintiff in connection with Dr. Somers' decision to withdraw his authority for Plaintiff to practice under his medical license. *See* Dkt. # 147, pp. 6-7. The question of whether Plaintiff had been afforded due process became moot once the Court determined that no liberty or property interest was implicated by Dr. Somers' decision and Plaintiff's reassignment. *See Wedges/Ledges of Cal., Inc. v. City of Phoenix,* 24 F.3d 56, 62 (9th Cir.1994) ("A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution."); *Mathews v. Eldridge,* 424 U.S. 318, 332 (1976). On appeal, the Ninth Circuit reversed, holding that there was a genuine dispute of material fact regarding whether Plaintiff had a liberty interest in his employment as a paramedic. *See Braswell,* 622 F.3d at 1102-03 (discussing whether Plaintiff would be able to find other employment opportunities within his chosen field). On remand, Shoreline now moves for summary judgment on the basis that, even if Plaintiff's liberty interest was implicated by Dr. Somers' decision, Plaintiff was provided adequate due process in connection with the decision and subsequent reassignment to firefighter status. Plaintiff moves for partial summary judgment on the same issue.

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333-334 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). However, "'(d)ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961). "(D)ue process is

flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). In determining whether due process was afforded in a particular instance, the Court must looked to three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Here, the private interest that was potentially affected was Plaintiff's liberty interest in practicing the profession of his choosing. While this is a significant interest, many of the trappings associated with such an interest are not present here. Plaintiff was not deprived of his employment with Shoreline, nor was he deprived of the level of salary to which he had become accustomed. He was merely tasked with performing different job duties within the same organization at the same salary level with the potential stigmatizing result that he would not be able to practice paramedicine elsewhere. The individual interest here therefore is significant, but not great.

The Court next considers the risk of erroneous deprivation balanced against the probable value of additional safeguards. Plaintiff argues that the risk of erroneous deprivation is high because Dr. Somers was a biased decision-maker, there was no formalized process of review and appeal, and the decision was made in a short period of time. *See* Dkt. # 225, p. 11. First, given the nature of the arrangement with Dr. Somers and the statutory framework in which the relationship operated, the Court sees no alternative to Dr. Somers being endowed with the ultimate authority over whether a paramedic is entitled to practice under his license. *See* Wash.

Rev. Code § 18.71.021 ("No person may practice or represent himself … as practicing medicine without first having a valid license to do so."); § 18.130.180(14) ("The following conduct, acts, or conditions constitute unprofessional conduct for any license holder under the jurisdiction of this chapter: … Failure to adequately supervise auxiliary staff to the extent that the consumer's health or safety is at risk.").

Second, although the ability to review a decision to withdraw authorization for a paramedic to practice paramedicine would certainly decrease the risk of erroneous deprivation if such a process was missing in the first instance, it is undisputed that here, Plaintiff did not attempt to appeal Dr. Somers' decision. He did not utilize the grievance procedure outlined in the CBA and he did not request any alternative procedure. Indeed, undisputed evidence shows that a year after Plaintiff's reassignment, Dr. Somers was willing to reinstate Plaintiff as a paramedic if he met certain conditions and Shoreline requested reinstatement. *See* Dkt. # 65.[2] Under these circumstances, the Court must conclude that Dr. Somers' decision was reviewable, but that a more formalized process of review would marginally reduce the risk of erroneous deprivation in the first instance.

Plaintiff's third argument regarding erroneous deprivation is that the short amount of time between the incident and Dr. Somers' final decision indicates that the procedures used here did not pass constitutional muster. The Court disagrees. The short amount of time to make the decision does not in itself render a procedure subject to a high risk of erroneous deprivation. Indeed, where tenured government employees are terminated – a sanction that exceeds that which Plaintiff received -- a "pretermination 'hearing,' though necessary, need not be elaborate."

---

[2] Plaintiff had at that point received a written warning based on an angry outburst at a superior officer and Shoreline declined to request reinstatement. *See* Dkt. # 64 (Braswell Dep. at 243-33; Kragness Dep. at 25); Dkt. # 66 (Brown Decl., Ex. K).

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-546 (1985).  Rather, "[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings," and in general, "something less" than a full evidentiary hearing is sufficient.  *Id.* (citing *Boddie v. Connecticut,* 401 U.S. 371, 378 (1971) and *Mathews,* 424 U.S. at 343).

In addition, Plaintiff does not address the probable value of additional safeguards.  In a case involving the deprivation of one's liberty interest in pursuing a profession based on stigmatization, the remedy mandated by the Due Process Clause is "an opportunity to refute the charge." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564 (1972). "The purpose of such notice and hearing is to provide the person an opportunity to clear his name." *Id.* at 573 n. 12. Plaintiff had two opportunities to present his side of the story and clear his name.  It is not clear whether any additional safeguards would better protect the interest here at stake.[3]

Finally, the Court considers the Government's interest and the fiscal and administrative burdens that additional or substitute procedural requirements would entail.  The fiscal and administrative burdens of additional procedural requirements prior to revocation of a paramedic's permission to practice under a physician's license would not be great.  For example, the formulation of explicit guidelines for Medical Directors like Dr. Somers regarding the kind procedures that must be followed when considering a revocation of a paramedic's authorization to practice under one's medical license would cost little but greatly increase the consistency and

---

[3] Indeed, in this case, Plaintiff never refuted the central allegations regarding the incident with Mr. Davis.  *See Codd v. Velger,* 429 U.S. 624 (1977) ("[T]he hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely 'to provide the person an opportunity to clear his name.' If he does not challenge the substantial truth of the material in question, no *hearing* would afford a promise of achieving that result for him.")

the appearance of fairness. Similarly, the implementation of a formalized appeals process, beyond the grievance process contained in the CBA, would foreclose any doubt that such review may be requested and obtained. The Court recognizes that the government's interest in protecting the public from paramedics that fail to conduct themselves to the standards imposed by licensed physicians is great. Nonetheless, additional procedural safeguards would likely not jeopardize that interest, provided that the government could place any paramedic on administrative leave pending the outcome of a more formal hearing or appeal.

Addressing all of the *Mathews* factors together, the Court concludes that Plaintiff was afforded adequate due process prior to his reassignment with Shoreline. While the third factor mitigates in favor of greater procedural protections, the first and second factors do not: the procedures used adequately protect the particular interest involved and little value would result from greater procedural protections. Since Plaintiff was afforded adequate due process when he was potentially deprived of his liberty interest in practicing paramedicine, Plaintiff's action is foreclosed as a matter of law. *See Mathews,* 424 U.S. at 349 ("The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.") (citing *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-172 (1951) (Frankfurter, J., concurring)). Accordingly, the Court does not address the other bases for summary judgment raised in the parties' motions for summary judgment.

## IV. CONCLUSION

Having read Shoreline's Motion for Summary Judgment (Dkt. No. 214) and Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 225), the responses and replies thereto, all attached declarations and exhibits, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Shoreline's motion for summary judgment (Dkt. # 214) is GRANTED.

(2) Plaintiff's motion for summary judgment (Dkt. # 225) is DENIED.

(3) This matter is hereby dismissed with prejudice.

(4) The Clerk of the Court is directed to forward a copy of this order to all counsel of record.

Dated this 30th day of May 2012.

_____
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE